# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Teresa Lorenz, | **Civil No. 13-cv-986 (PJS/SER)** |
| Plaintiff, | |
| v. | |
| JPMorgan Chase, | |
| Defendant, | **REPORT AND RECOMMENDATION** |

Teresa Lorenz, *Pro Se*, 7811 209th Street North, Forest Lake, Minnesota 55025.

Calvin P. Hoffman and Timothy M. Kelley, Esqs., Stinson Leonard Street LLP, 150 South Fifth Street, Suite 2300, Minneapolis, Minnesota 55402, for Defendant.

STEVEN E. RAU, United States Magistrate Judge

The above-captioned case comes before the undersigned on Defendant JP Morgan Chase's ("JP Morgan") Motion for Summary Judgment. (JP Morgan's Mot. for Summ. J., "Mot. for Summ. J.") [Doc. No. 39]. This matter has been referred for the resolution of pretrial matters pursuant to 28 U.S.C. § 636(b)(1)(A) and District of Minnesota Local Rule 72.1. In addition, the Honorable Patrick J. Schiltz referred all dispositive motions to the undersigned. (Order of Reference) [Doc. No. 6]. For the reasons stated below, the Court recommends granting JP Morgan's motion.

## I.    BACKGROUND[1]

Plaintiff Teresa Lorenz ("Lorenz") filed her Complaint against JP Morgan Chase on

---

[1]    The factual background was originally summarized in the Court's April 14, 2014 Order. (Order Dated Apr. 14, 2014) [Doc. No. 30]. Only those facts relevant to the motion now before the Court are included below, and additional facts have been added where necessary.

1

April 26, 2013, alleging violation of the Fair Debt Collection Practices Act ("FDCPA") and negligence, both arising out of a dunning letter dated June 8, 2011.[2] (Compl.) [Doc. No. 1 at 6, 13–14]. As relief, Lorenz asks:

1. For an order declaring the foreclosure prosecuted by Defendant, void and of no force and effect;

2. For [quiet] title as to the above referenced claims by Defendant;

3. For $100,000 for the above referenced violation of the Fair Debt [C]ollection Practice Act on proof at trial;

4. For pre-judgment and post-judgment interest according to proof at trial;

5. For attorney's fees and costs as provided by statute; and

6. For such other relief as the Court deems just and proper.

(*Id.* at 15). JP Morgan answered Lorenz's Complaint on May 30, 2013. (Answer) [Doc. No. 5].

Lorenz also filed a Motion for a Preliminary Injunction on April 26, 2013, seeking an order from the Court preventing foreclosure on her property until the conclusion of this lawsuit. (Mot. for a Preliminary Injunction) [Doc. No. 3]. A hearing on Lorenz's Motion for a Preliminary Injunction and a pretrial conference were held on September 23, 2013. (Amended Minute Entry Dated Sept. 23, 2013) [Doc. No. 19]. At the hearing, Lorenz withdrew her Motion for a Preliminary Injunction. (*Id.*).

On December 4, 2013, Lorenz filed an Amended Complaint against Bank of New York Mellon, without bringing a motion, or following the other requirements of District of Minnesota Local Rule 7.1 and Federal Rule of Civil Procedure 15(a). (Am. Compl.) [Doc. No. 21]. Due to Lorenz's failures to comply with Local Rule 7.1 and Federal Rule of Civil Procedure 15(a),

---

[2] A dunning letter is a letter "demand[ing] payment from []a delinquent debtor[]." Dun, *Black's Law Dictionary* (9th ed. 2009).

the Court struck Lorenz's Amended Complaint. (Order Dated Dec. 10, 2013) [Doc. No. 26]. On April 4, 2014, Lorenz filed a motion to amend her complaint. (Pl.'s Mem. in Supp. of Mot. for Leave to Amend the Compl.) ("Mot. to Amend") [Doc. No. 28]. Judge Schiltz denied the motion. (Order Dated May 28, 2014) [Doc. No. 37].[3]

JP Morgan filed a Motion for Summary Judgment on June 18, 2014. (Mot. for Summ. J.) In support of its motion, JP Morgan argues that Lorenz's FDCPA claim is time-barred and that Lorenz's negligence claim fails as a matter of law because JP Morgan owed no duty of care to Lorenz. (JP Morgan's Mem. in Supp. of Mot. for Summ. J., "Mem. in Supp.") [Doc. No. 41 at 3–4]. Additionally, JP Morgan argues that, if the Court concludes that Lorenz has raised a claim for fraudulent misrepresentation, that claim would also fail because Lorenz has not shown that she acted in reliance on JP Morgan's alleged misrepresentation or that she suffered pecuniary damage. (*Id.* at 4–6).

A hearing on the Motion for Summary Judgment was scheduled for July 30, 2014. (Notice of Hr'g on Mot. for Summ. J.) [Doc. No. 40]. On June 23, 2014, Lorenz filed a Notice of Voluntary Dismissal, signed only by her and not by any representative of JP Morgan. (Lorenz's Notice of Voluntary Dismissal) [Doc. No. 44]. On June 24, 2014, the Court issued an order that explained that, because JP Morgan filed an answer and moved for summary judgment, Federal Rule of Civil Procedure 41(a)(1) required Lorenz to submit a stipulation of dismissal signed both by her and by a representative of JP Morgan in order to dismiss the case voluntarily. (Order Dated June 24, 2014) [Doc. No. 45].

After Lorenz failed to file a response to JP Morgan's Motion for Summary Judgment

---

[3] Judge Schiltz decided Lorenz's Motion to Amend based on a potential conflict of interest raised by one of the parties Lorenz sought to add as a defendant in her motion. *See* (Order Dated May 13, 2014) [Doc. No 32 at 6].

3

within the time period permitted by D. Minn. LR 7.1(c)(2), the Court again instructed Lorenz to file a stipulation of dismissal signed by her and a representative of JP Morgan, as explained in the Court's previous June 24, 2014 order.[4] (Order Dated July 10, 2014) [Doc. No. 46]. Furthermore, the hearing scheduled for July 30, 2014, was cancelled, and the Court instructed that if a stipulation of dismissal signed by both parties was not filed by July 30, 2014, the Court would take JP Morgan's Motion for Summary Judgment under advisement and decide it on the papers. (*Id.*). Lorenz subsequently submitted two more stipulations of dismissal, neither signed by a representative of JP Morgan. (Lorenz's Stipulation of Voluntary Dismissal Pursuant to F.R.C.P. 41(a)(1)(A)(ii)) [Doc. No. 47]; (Lorenz's Stipulation of Voluntary Dismissal Pursuant to F.R.C.P. 41(a)(1)(A)(ii)) [Doc. No. 48].

Accordingly, JP Morgan's Motion for Summary Judgment is before the Court and ripe for consideration. Lorenz has filed nothing in opposition to the motion.

## II.   DISCUSSION

### A.   Legal Standard

Although labeled as a motion for summary judgment, JP Morgan relies only on Lorenz's Complaint in support of its motion. *See generally* (Mem. in Supp.). The Court, therefore, construes JP Morgan's motion as a motion for judgment on the pleadings, rather than a motion for summary judgment. *Cf.* Fed. R. Civ. P. 12(d) (stating that if, when a party brings a motion for judgment on the pleadings under Rule 12(c), "**matters outside the pleadings** are presented to and not excluded by the court, the motion must be treated as one for summary judgment") (emphasis added); *see also* 5C *Federal Practice & Procedure* § 1369 (3d ed. 2004) (noting that the question of which dispositive motion "should be employed in a particular context usually will

---

[4]   The deadline to respond to the Motion for Summary Judgment, pursuant to D. Minn. LR 7.1(c)(2), was July 9, 2014.

be answered on the basis of the challenge being made, the identity of the party interposing it, and the nature of the alleged defect").

When considering a motion for judgment on the pleadings under Rule 12(c), a court "applies the same standard used to address a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." *Riley v. Cordis Corp.*, 625 F. Supp. 2d 769, 775 (D. Minn. 2009) (PJS/RLE) (citing *Ashley County v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir.2009)).

> Under this standard, the court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. Although the factual allegations in the complaint need not be detailed, they must be sufficient to "raise a right to relief above the speculative level."

*Id.* (citation omitted) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). A court "does not defer to any legal conclusions or formulaic recitations of the claims' elements." *Folger v. City of Minneapolis*, Civil No. 13-3489 (SRN/JJK), 2014 WL 4187504, at *3 (D. Minn. Aug. 22, 2014) (citing *Minneapolis Firefighters' Relief Ass'n v. MEMC Elec. Materials, Inc.*, 641 F.3d 1023, 1027 (8th Cir. 2011)).

A motion for judgment on the pleadings is appropriate "when the material facts are not in dispute between the parties and a judgment on the merits can be achieved by focusing on the content of the competing pleadings and related materials." *Id.* (internal quotations marks omitted). "A fact is material if its determination in favor of the non-moving party could affect the result in the case." *Jenkins v. S. Farm Bureau Cas.*, 307 F.3d 741, 744 (8th Cir. 2002); *see also King v. Dingle*, 702 F. Supp. 2d 1049, 1063 (D. Minn. 2010) (ADM/RLE) ("A disputed fact is 'material,' if it must inevitably be resolved, and that resolution will determine the outcome of the case.").

Before addressing the application of this standard to the claims at issue in this case, the Court notes that "the pleadings of pro se parties '[are] to be liberally construed, and a pro se

5

complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Philippi v. Brellenthin*, Civil No. 11-2389 (JRT/LIB), 2012 WL 947016, at *1 (D. Minn. Jan. 26, 2012) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), *report and recommendation adopted by* 2012 WL 947083 (Feb. 23, 2012). Nevertheless, a pro se complaint "must present a claim on which the Court can grant relief" and "liberal construction of a pro se party's pleadings does not excuse them from complying with the substantive and procedural law." *Id.* (internal quotation marks omitted).

### B. FDCPA Claim[5]

A party alleging violation of the FDCPA must bring his or her claim "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). When the alleged violation of the FDCPA is an abusive debt collection letter, the one-year time period under § 1692k(d) begins on the date that the letter is sent to the debtor. *Freyermuth v. Credit Bureau Servs., Inc.*, 248 F.3d 767, 770 (8th Cir. 2001) (citing *Mattson v. U.S. W. Commc'ns, Inc.*, 967 F.2d 259, 261 (8th Cir. 1992)). Lorenz bases her FDCPA claim on the dunning letter dated June 18, 2011. (Compl. at 13). Lorenz filed her complaint on April 26, 2013, more than one year after the

---

[5] Although not discussed by JP Morgan in its motion and although not necessary to the Court's determination that JP Morgan should be granted judgment on the pleadings, the Court notes that Lorenz's claims appear to be premised, to some degree, on a version of a "show me the note" theory. A "show me the note" theory generally involves an assertion by a plaintiff that "because the entity that holds her mortgage (say, MERS) is not the same as the entity that holds her note (say, U.S. Bank), the mortgage on her home or the foreclosure of that mortgage is invalid." *Welk v. GMAC Mortg., LLC*, 850 F. Supp. 2d 976, 980 (D. Minn. 2012) (PJS/JJK). For example, in her Complaint, Lorenz states that she "demands strict verified proof . . . that, at all times, the ownership of the alleged lien document and the alleged note were transferred together such that, at no time, one entity held the alleged lien and another held the alleged note." (Compl. at 13). The "show me the note" theory has been deemed "frivolous when made under Minnesota law. Indeed, this argument has been rejected by the Minnesota Supreme Court, by the United States Court of Appeals for the Eighth Circuit, and by every federal judge sitting in Minnesota who has addressed the argument." *Welk*, 850 F. Supp. 2d at 980. These courts have held that, "under Minnesota law, the entity that holds the mortgage can foreclose on the mortgage even if that entity does not also hold the note." *Id* at 981.

6

dunning letter was sent to her. (*Id.* at 1). Lorenz's FDCPA claim is time-barred under § 1692k(d). Thus, even if the facts alleged in Lorenz's Complaint that serve as the basis for her FDCPA claim are accepted as true and all reasonable inferences made in her favor, Lorenz is not entitled to relief on her FDCPA claim. The Court therefore recommends that JP Morgan be granted judgment on the pleadings on Lorenz's FDCPA claim.[6]

### C. Negligence Claim

Under Minnesota law, a claim of negligence is composed of four elements: "(1) the existence of a duty of care; (2) a breach of that duty; (3) an injury; and (4) that the breach of the duty was a proximate cause of the injury." *Doe 169 v. Brandon*, 845 N.W.2d 174, 177 (Minn. 2014) (citing *Lubbers v. Anderson*, 539 N.W.2d 398, 401 (Minn. 1995)). A bank and its customer relate to one another, respectively, as debtor and creditor. *Kataviravong v. Mirabella Mortg., LLC*, Civil No. 12–493 (ADM/JJG), 2012 WL 2045957, at *4 (D. Minn. June 6, 2012)

---

[6] With regard to the FDCPA, Lorenz primarily refers to JP Morgan's sending of the dunning letter and cites to 15 U.S.C. §§ 1692e and 1692f. (Compl. at 13–14). These provisions address the use of false, deceptive, or misleading means to collect a debt and the use of unfair or unconscionable means to collect or attempt to collect a debt respectively. 15 U.S.C. §§ 1692e and 1692f. At certain points in her Complaint Lorenz also cites 15 U.S.C. § 1692g and makes reference to her demands for verification of the debt for which she alleges JP Morgan has demanded payment. (Compl. at 8, 17–19). Section 1692g(b) requires a debt collector to cease collection of a debt or verify the debt if the consumer notifies the debt collector in writing within thirty days after receipt of a statutorily proscribed notice that "the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor." To the extent Lorenz raises a claim that JP Morgan violated § 1692g(b), her claim is not sufficiently pleaded. In one respect, Lorenz seems to allege that the filing of her Complaint itself is her request for verification under § 1692g(b), but does not (and could not) allege in her Complaint that JP Morgan failed to cease debt collection efforts after the filing of her Complaint. *See* (Compl. at 8). To the extent Lorenz bases any § 1692g(b) claim on a different request for verification, Lorenz has not alleged that she made any verification request in writing and within the thirty day time period set forth in § 1692g(b). *See* (Compl. at 14, 17, 19). Any such claim must, therefore, fail, because "[w]ithout such factual pleading, it is entirely speculative, and not 'plausible,' that Plaintiff has a cognizable claim." *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *5 (E.D.N.Y. Dec. 15, 2010) (cited with approval in *Bohner v. LHR, Inc.*, Civ. No. 10-4621 (DWF/LIB), 2012 WL 6755275, at *5 (D. Minn. Dec. 10, 2012), *report and recommendation adopted by* 2013 WL 25073 (Jan. 2, 2013)).

7

(citing *Klein v. First Edina Nat'l Bank*, 196 N.W.2d 619, 623 (Minn. 1972)); *Impulse Trading, Inc. v. Norwest Bank Minn., N.A.*, 870 F. Supp. 954, 961 (D. Minn. 1994) (DSD/JGL) (citing *Hurley v. TCF Banking & Sav., F.A.*, 414 N.W.2d 584, 587 (Minn. Ct. App. 1987)). Absent "a special relationship . . . between the bank and the borrower, where the bank has reason to know of the customer's trust and reliance . . . 'it has no special duty to counsel the customer.'" *Kataviravong*, 2012 WL 2045957 at *4 (quoting *Klein*, 196 N.W.2d at 623); *see also Impulse Trading*, 870 F. Supp. at 961 (citing *Stenberg v. Nw. Nat'l Bank of Rochester*, 238 N.W.2d 218 (Minn. 1976); *Klein*, 196 N.W.2d at 623) ("The relationship between a bank and its customer . . . is not one of agent and principal and therefore does not give rise to a fiduciary relationship."). Here, Lorenz does not allege any facts that might give rise to a special relationship.

A "special relationship" was found, for example, in *Hassman v. First State Bank of Swatara*, 236 N.W. 921, 922 (Minn. 1931) (cited in *Klein*, 196 N.W.2d at 623). There, the Minnesota Supreme Court considered a fraud charge against, *inter alia*, a bank cashier, and found a fiduciary relationship based on the following analysis:

> The defendants contend that the evidence does not support the finding that a confidential and fiduciary relation existed between plaintiff and McGee. It clearly appears from his deposition that Clement had habitually sought McGee's advice for some ten years, that the trust and confidence so often reposed in country bankers by their customers existed in this case, and that, because of the infirmity of Clement's judgment, it was a potent influence in getting him to purchase [the property at issue].

*Id.* Here, Lorenz has not asserted that the interaction between her and JP Morgan was a "special relationship," such that "[JP Morgan] ha[d] reason to know of [Lorenz's] trust and reliance." *Kataviravong*, 2012 WL 2045957 at *4. Nor does she allege any other facts that could form the basis of a duty of care owed by JP Morgan to Lorenz. *See* (Compl. at 14). Lorenz's negligence claim cannot survive in the absence of a duty on the part of JP Morgan, because "[t]o withstand a

8

Rule 12(c) motion for judgment on the pleadings, a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (internal quotation marks omitted). The Court therefore recommends that JP Morgan be granted judgment on the pleadings on Lorenz's negligence claim.

### D. Fraudulent Misrepresentation Claim

Finally, Lorenz's Complaint arguably raises a claim for fraudulent misrepresentation. Although pleaded under the heading "Negligence," Lorenz alleges the following:

> Defendant made a false representation to Plaintiff demanding payment on a debt. Defendant knew, or should have known that said demand was made without agency on the part of the alleged agent, and standing and/or capacity on the part of Defendant's alleged principal. Defendant intended that Plaintiff accept the representation of Defendant as true. Plaintiff believed Defendant. Plaintiff was subjected to stress and harm by being forced to take action to establish the agency, standing and capacity of the demand which was required by law to be revealed to Plaintiff. Plaintiff was harmed thereby.

(Compl. at 14). Furthermore, Lorenz characterizes the above conduct as "an act of criminal fraud and/or negligence which resulted in the civil tort alleged here under as the cause of action of common law fraud and/or negligence or fraud and/or negligence per se." (*Id.*).

Assuming Lorenz's Complaint raises a fraudulent misrepresentation claim, JP Morgan is entitled to judgment on the pleadings as to this claim as well. Under Minnesota law, fraudulent misrepresentation consists of the following elements:

> (1) there was a false representation by a party of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made as of the party's own knowledge without knowing whether it was true or false; (3) with the intention to induce another to act in reliance thereon; (4) that the representation caused the other party to act in reliance thereon; and (5) that the party suffer[ed] pecuniary damage as a result of the reliance.

*Trooien v. Mansour*, 608 F.3d 1020, 1028 (8th Cir. 2010) (quoting *Hoyt Props., Inc. v. Prod.*

9

*Res. Grp., LLC*, 736 N.W. 313, 318 (Minn. 2007)). Lorenz alleges that JP Morgan "made a false representation" to her by "demanding payment on a debt" and that, in sending Lorenz the dunning letter, JP Morgan "intended to miss-lead [sic]" Lorenz into "believing that [Lorenz] was under obligation to forfeit [her] personal property to [JP Morgan] in the form of money of the United States." (Compl. at 14). Assuming this allegation and the other allegations in Lorenz's Complaint are true, JP Morgan argues that Lorenz has failed to meet the reliance element: "Plaintiff does not contend that she acted in reliance on such information, only that she 'believed [JP Morgan].' Simply believing [JP Morgan] is not enough. Plaintiff had to 'act in reliance' on a misrepresentation." (Mem. in Supp. at 5) (citation omitted).

Lorenz's Complaint states: "Defendant intended that Plaintiff accept the representation of Defendant as true. Plaintiff believed Defendant. Plaintiff was subjected to stress and harm **by being forced to take action** to establish the agency, standing and capacity of the demand which was required by law to be revealed to Plaintiff." (Compl. at 14) (emphasis added). Arguably, JP Morgan removes Lorenz's words from their context. Read together with the Complaint's immediately prior assertions of misrepresentation, this passage could allege that Lorenz acted—by attempting to determine the legal status of her alleged creditor—in reliance on JP Morgan's alleged misrepresentation.

Even under this construction, however, Lorenz's complaint falls short of establishing reliance. Lorenz does not allege that she took any action **on the premise** that JP Morgan's representations were true, but instead alleges that she had to act **to determine whether** JP Morgan's representations were true. *Cf.* Restatement (Second) of Torts § 548 (1977) ("The maker of a fraudulent misrepresentation is not liable to one who does not rely upon its truth but upon the expectation that the maker will be held liable in damages for its falsity."). Thus, no

material fact regarding Lorenz's reliance is in dispute, because any dispute about whether Lorenz did in fact take action to determine whether JP Morgan had the authority to demand payment of a debt, even if resolved in Lorenz's favor, would not affect the result in this case, as her allegations fall short of the type of reliance required to state a fraudulent misrepresentation claim. *See Jenkins*, 307 F.3d at 744.

Even if Lorenz's action as alleged constituted reliance for the purposes of a fraudulent misrepresentation claim, JP Morgan succeeds on its second argument—that Lorenz has failed to allege that she suffered pecuniary damage as a result of reliance on JP Morgan's alleged misrepresentation. (Mem. in Supp. at 5–6). Lorenz alleges that she suffered "stress and harm" resulting from the need to investigate the status of her alleged creditor. (Compl. at 14); *see also* (Compl. at 12) (alleging that JP Morgan "subjected [Lorenz] to severe emotional stress through direct or implied threat that [Lorenz] would lose" her home if she failed to pay the debt as demanded by JP Morgan). This alleged harm does not constitute pecuniary damage. *See Abed v. Fafinski & Wallrich, P.A.*, No. A05-1689, 2006 WL 1738177, at *2 (Minn. Ct. App. June 27, 2006) ("Although Abed argues on appeal that there exists a myriad of fact issues as to F & W's representations to him, he fails to show any fact issue as to pecuniary damages. Whether or not F & W made fraudulent statements or negligently misrepresented facts, Abed cannot prevail on his claims unless he suffered **monetary** damages.") (emphasis added); *see also* Pecuniary, *Black's Law Dictionary* (9th ed. 2009) (defining 'pecuniary' as "[o]f or relating to money; monetary"). Indeed, Lorenz seeks monetary damages only as relief for the alleged FDCPA violation. (Compl. at 15).

Nor could Lorenz prevail under the theory that she suffered pecuniary damage in the form of the foreclosure of her home. Even if such a foreclosure has occurred and is invalid, it

still would not have occurred as a result of Lorenz's actions in response to the dunning letter sent by JP Morgan (that is, Lorenz's actions to determine the legal status of her alleged creditor), which is the subject of Lorenz's claims. Therefore, even if Lorenz characterized her pecuniary damage as the foreclosure of her home, or some downstream consequence thereof, she could not meet the requirement that she "suffer[ed] pecuniary damage **as a result of**" her reliance on JP Morgan's representations. *Trooien*, 608 F.3d at 1028 (emphasis added). Again, Lorenz's claim cannot survive JP Morgan's motion, because even if the facts alleged in Lorenz's complaint are true, she has not raised her right to relief above the speculative level. *See Riley*, 625 F. Supp. 2d at 775. Assuming, therefore, that Lorenz's Complaint raises a claim for fraudulent misrepresentation, the Court recommends that JP Morgan be granted judgment on the pleadings on this claim.[7]

### III.    Dismissal With or Without Prejudice

The Court recommends that Lorenz's FDCPA claim based on the June 18, 2011 dunning letter be dismissed with prejudice, as no amount of re-pleading can alter the fact that this claim is time-barred. With regard to Lorenz's remaining claims—that is, her claim for negligence, fraudulent and/or negligent misrepresentation, and any FDCPA claim under § 1692g(b)—it is arguable that such claims should be dismissed without prejudice and that Lorenz should be granted leave to amend her Complaint. *See Riley*, 625 F. Supp. 2d at 773 (dismissing certain claims without prejudice on a motion for judgment on the pleadings and granting leave to amend when claims were "not pleaded sufficiently under the Federal Rules of Civil Procedure").

---

[7]    The result would be the same in the event that the Complaint raised a claim for negligent misrepresentation instead. "The elements of a negligent misrepresentation claim differ from fraudulent misrepresentation only with respect to the required state of mind." *Trooien*, 608 F.3d at 1028. Because Lorenz's potential fraudulent misrepresentation claim fails for want of showing action in reliance on a misrepresentation and pecuniary harm, a claim for negligent misrepresentation would fail for the same reasons.

Nevertheless, the Court concludes that dismissing these claims without prejudice and granting Lorenz leave to amend is inappropriate in this case for three reasons.

First, Lorenz has already sought leave to file an amended complaint and, when doing so, did not attempt to cure each of the deficiencies in pleading discussed herein, and it appears that she would have created new deficiencies in pleading had her request been granted.[8] *See generally* (Attach. 1, Proposed Am. Compl., Attached to Pl.'s Mem. in Supp. of Mot. for Leave to Amend the Compl.) [Doc. No. 28-1]. Indeed, Lorenz's proposed amended complaint did not even include a negligence claim, let alone address the deficiencies of any negligence claim raised in her Complaint.[9] *See* (*id.*). Second, Lorenz's failure to respond in any way to JP Morgan's Motion for Summary Judgment and her repeated, though ineffective, attempts to voluntarily dismiss this action indicate that Lorenz has abandoned her claims against JP Morgan. *Cf. Philippi*, 2012 WL 947016, at *5 (recommending dismissal of claims with prejudice on Rule 12(b)(6) motion due, in part, to plaintiff's failure to appear for hearing on defendants' motion). Finally, the Court finds that the inadequacies in Lorenz's Complaint are "not just one[s] of form" but are inadequacies "of content and plausibility." *Folger*, 2014 WL 4187504, at *6. To allow Lorenz to re-plead her claims at this point in time is therefore unwarranted. As a result, the Court recommends that JP Morgan's motion be granted and that this action be dismissed with prejudice.

---

[8]     Lorenz's first filing of an amended complaint, a filing which the Court struck due to Lorenz's failure to comply with Local Rule 7.1 and Federal Rule of Civil Procedure 15(a), even if considered, would likewise fail to cure the deficiencies in pleading discussed in this Report and Recommendation. *See* (Am. Compl.); (Order Dated Dec. 10, 2013).

[9]     The Court also notes that the claims at issue in this case are rather simple causes of action. "Insofar as [these claims are] easy to understand, [they] should also be easy to plead . . . assuming there is in fact any basis" to make such claims. *See Folger*, 2014 WL 4187504, at *6.

13

### IV. CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant's Motion for Summary Judgment [Doc No. 39] be **GRANTED**; and

2. This action be dismissed with prejudice.

Dated: December 8, 2014

*s/Steven E. Rau*
STEVEN E. RAU
United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **December 22, 2014,** a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after service thereof. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.